IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DELCENE WOODBERRY** | \| |
| **Plaintiff,** | \| |
| v. | \| Case No.: 8:18-cv-00551-PWG |
| **DOLLAR TREE STORES,** | \| |
| **Defendant.** | \| |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE IN SUPPORT
OF DOLLAR TREE'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree"), by undersigned counsel, pursuant to Fed. R. Civ. P. 56, respectfully moves this Honorable Court for entry of summary judgment in its favor as to all claims at issue in this matter. In support thereof, Dollar Tree states that the following material facts are not genuinely disputed:

**A.  The Incident**

1. On May 19, 2016, Delcene Woodberry ("Plaintiff") went to the Dollar Tree store located at 850 Largo Center Drive, Upper Marlboro, Maryland 20774 (the "Store") to buy a dog collar. (*See* Compl. at ¶4; *see also* Joint Exhibit A (Dep. Of Plaintiff) at 66:1-67:21.)

2. An employee told the Plaintiff where the pet aisle was located. (*See* Joint Ex. A at 100:12-16.)

3. Once she arrived at the pet aisle, the Plaintiff spent a lot of time deciding what type of dog collar she wished to purchase. (*See id.* at 100:18-20.)

4. While deciding what type of dog collar to purchase, Plaintiff was standing facing the shelf and sideways from the front of the aisle. (*See id.* at 100:6-10.)

1

5.      Plaintiff testified that as she was preparing to leave the aisle after selecting a dog collar, she was hit in the head and back area of her body by boxes stacked on a U-Boat cart being pushed by a Dollar Tree employee. *See id.* at 101:4 – 104:9[1] (the "Subject Occurrence").

6.      Dollar Tree employees took Plaintiff to the front of the Store and asked her to fill out an incident report, which she refused to do. (*See id.* at 108:19 – 109:12.)

**B.      Plaintiff's Disability for Unrelated Connective Tissue Disorder**

7.      Plaintiff is a 58-year old woman who is permanently disabled due to a connective tissue disorder that is unrelated to the Subject Occurrence.[2] *See* Joint Ex. A at 47:2-14; *See* Joint Ex. B (Rosenthal and Siekanowicz Records) at 3.

8.      Plaintiff describes her connective tissue disease as a "degenerative muscle [disease]" but further testifies that the "doctor don't know pretty much, but he says it could be Lupus and then again, it could be osteoporosis. They don't know which one. They take tests to determine, but it's nothing conclusive at this point." *See* Joint Ex. A at 47:15-48-5.

9.      The connective tissue disease that caused Plaintiff to be on disability was initiated in 2016 (same year as the Occurrence at the Dollar Tree store) when Plaintiff's primary care physician referred her to a rheumatologist after Plaintiff's blood work was concerning. *See id.* at 48:12-49:6. She takes Plaquenil for this condition although her doctor admits that "he don't know too much about [her illness]." *See id.* at 50:1-9.

10.     Plaintiff is on disability *solely* as a result of the mysterious connective tissue disease, which was diagnosed around the same time as the Occurrence. *See id.* at 54:1-5.

---

[1]     Plaintiff confusingly changed her testimony during her deposition. At first, she testified that she did not see either anyone pushing a U-Boat cart or any boxes prior to the incident. *See* Ex. A at 101:11-102:6.) Later on, Plaintiff testified that prior to the incident, she saw an employee pushing a U-Boat cart containing boxes. (*See id.* at 114:12-22.)

[2]     Connective tissue disease is an autoimmune disorder wherein your immune system attacks healthy cells and tissues by mistake. Resulting symptoms can include pain in the joints and muscle pain.

2

### C. Pre-Accident Health Conditions

11. On January 26, 2004, Plaintiff filed a claim for Workers' Compensation Benefits after injuring her lower back in the course of her employment at Collington Episcopal Life Care Center. (*See* Joint Ex. C (Plaintiff's Worker's Compensation File) at 11.) Specifically, Plaintiff stated "I grab a resident who was falling and felt a sharp pain in my back." (*Id.*)

12. In 2007, the Workers' Compensation Commission found her to be 13% permanent partial disability, retroactively awarding $54.000 per week for a period of 65 weeks. (*See id.* at 10.)

13. Plaintiff testified that she also received lower back trigger point injections in connection with the Collington Episcopal incident. (*See* Joint Ex. A. at 12:17-13:4, 75:21-76:3)

14. Plaintiff underwent decompression surgery for carpal tunnel syndrome in 2008 and 2010. (*See* Joint Ex. A at 31:14-32:8.) Plaintiff's carpel tunnel disease negatively impacts her daily life. (*See id.* at 35:10-19.)

15. On April 30, 2012, Plaintiff presented to Community Radiology Associates for a right shoulder radiological exam. *See* Joint Ex. D (Greater Baden Medical Services Records) at 59. Plaintiff was diagnosed with "minimal degenerative changes" to her right shoulder. (*See id.*)

16. As of January 30, 2012, Plaintiff was taking the following medications and/or supplements:

   a. Diovan ACT for Hypertension

   b. Doltaren Gel for Pain

   c. Trozodone for Chemical Imbalance

   d. Zetia for Cholesterol and Hypertension

   e. Calcium for Osteoarthritis

3

(*See id.* at 4.)

17.   Plaintiff was diagnosed with herpes in 2000. (*See* Joint Ex. A at 61:8-12.)

18.   Plaintiff was diagnosed with asthma in 2010. (*See id.* at 62:20—63-3.)

19.   As of January 30, 2012, Plaintiff's records indicate that she had been feeling "down, depressed, or hopeless" during the last month. (*See* Joint Ex. D at 5-6.) Notably, Plaintiff's records from June 23, 2016—one month post-incident—also indicate that "Pt does have a *hx* of anxiety and depression." (*See* Joint Ex. E (Southern Maryland Hospital Center) at 32-35.) However, Plaintiff puzzlingly testified that she did not have depression prior to the incident. (*See* Joint Ex. A at 62:5-19.)

20.   On February 5, 2015, Plaintiff presented to Fort Washington Medical Center complaining of left knee pain and swelling for the previous three weeks. After an examination, the physician diagnosed arthritis of both knees. (*See* Joint Ex. F (Fort Washington Medical Center Records) at 26, 28, 32) Plaintiff testified that she had a knee replacement surgery on November 13, 2017 (the medical records indicated the surgery was actually on February 24, 2017) as a result of her osteoarthritis. (*See* Joint Ex. A at 55:7-21.) She also underwent physical therapy for over one year following the knee replacement (which again was necessitated by Plaintiff's osteoarthritis). (*See id.* at 56:3-7.)

21.   When asked whether surgery to her knee was attributable to her fall at Dollar Tree, Plaintiff testified "I don't know. I don't know. I really don't know." (*See id.* at 59:11-15.)

22.   On December 30, 2015, Plaintiff presented to Southern Maryland Hospital Center complaining of right shoulder and bicep pain that worsened with movement, as well as difficulty with raising her right arm above shoulder level. (*See* Joint Ex. E at 19.) She stated that the pain radiated to her neck. (*See id.* at 17.)

4

23. On December 30, 2015, Plaintiff requested IV medication to control her right shoulder pain and had a prescription for Percocet. (*See id.* at 20.)

24. On December 30, 2015, Plaintiff's doctor wrote that her findings were "suggestive of infraspinatus calcific tendinopathy" to her right shoulder. (*See id.*) [3]

25. Plaintiff confusingly testified that the fall caused her right shoulder injury, even though she had pre-accident pain to her right shoulder. (*See* Joint Ex. A at 63:6-21.)

26. As of the date of the Subject Occurrence, Plaintiff's medical history included fibromyalgia, osteoarthritis, a connective tissue disease, and hypertension. (*See* Joint Ex. F at 65; *see also* Ex. G (Advanced Pain Medicine Institute Records) at 90 (indicating history of fibromyalgia); Ex. E at 51-57 (patient history including "primary fibromyalgia syndrome").) [4]

27. Plaintiff takes prednisone for pain and stiffness in her hands emanating from long-lasting carpal tunnel syndrome. (*See* Joint Ex. A 35:7-36:19.)

### D. Post-Accident Complaints and Medical Treatment

28. Plaintiff alleges that as a result of the Occurrence, she sustained injuries to her head, neck, upper lumbar spine, and right rotator cuff. (*See* Joint Ex. A at 64:10-16, 63:6-21.) She also alleges that the incident caused her to have depression. (*See id.* at 62:10-19.)

29. On May 20, 2016, the day following the incident, Plaintiff presented to Fort Washington Medical Center with a chief complaint of back pain. (*See* Joint Ex. F at 19.) After an examination, the Plaintiff was diagnosed with "back pain – thoracic back pain." (*See id.* at 21.)

---

[3] Notably, this pre-accident examination was nearly four years after Plaintiff's January 30, 2012 right shoulder diagnosis of degenerative disease.

[4] Plaintiff has also been diagnosed with peripheral vascular disease since the incident (unrelated). (*See* Ex. D at 81.)

30.   On June 23, 2016, Plaintiff underwent a CT scan of her head, which revealed "age-related cortical involutional changes" and "no acute intracranial abnormality." (*See* Joint Ex. E at 32-35, 43.)

31.   Plaintiff's current complaints include being unable to fully turn her neck, poor range of motion, back problems, and problems with sitting and walking. (*See* Joint Ex. A. at 144:14-18.) Plaintiff also has difficulty washing her hair because she "can't reach." (*See id.* at 144:21 – 145:1.)

32.   Plaintiff has complained of pain to her lower back since the accident. (*See* Joint Ex. G (Advance Pain Medicine Institute Records) at 89.)

33.   When asked about her right shoulder, Plaintiff testified: "The shoulder is painful, very painful, pain, so painful . . . My pain ranges from eight to ten every day. Every day, I'm in pain." (Ex. A. at 145:13-18.)

34.   Plaintiff presently experiences difficulties with her left and right knee. (*See id.* at 58:5-7.) However, she does not know whether her knee pain and difficulties stemm from the fall or her ongoing osteoarthritis.

35.   She testified:

> Q:   The problems with your left knee are related to a diagnosis of osteoarthritis?
>
> A:   I'm not really certain. I'm not really certain about that because I fell. So I'm not certain about that. . . They just say I have osteoarthritis, not necessarily in my knees.
>
> *          *          *          *
>
> Q:   Are you saying that the—is your right knee replacement attributable to your fall at the Dollar Tree?
>
> A:   I don't know. I don't know. I really don't know. These questions are confusing because you're asking me do I have that

6

disease. I do. Now you're asking me is that contributing to my knee. No, not entirely. You know, it's not entirely contributing because I didn't have this pain like I have now. I didn't have no pain. Even if it was associated with the osteoarthritis, I didn't have the pain like I'm having now."

(*See id.* at 58:22—59:21.)

36. On January 23, 2017, a right knee MRI revealed degenerative medial meniscal tear and severe osteoarthritic change in the medial compartment with subchondral bone edema and a 1.2 osteochondral lesion with the medial femoral condyle. (*See* Joint Ex. D at 46-47.)

37. Plaintiff's pain negatively impacted her mood and sleep. (*See* Joint Ex. G at 112.)

Dated: October 29, 2019

/s/ *Katherine Yoder*
Ronald M. Cherry (Bar I.D. 07927)
Katherine B. Yoder (Bar I.D. 27193)
Andrew S. Bassan (Bar I.D. 20613)
Bonner Kiernan Trebach & Crociata LLP
711 St. Paul Street
Baltimore, Maryland 21202
(410) 415-1669 (office)
(410) 415-1667 (facsimile)
rcherry@bonnerkiernan.com
kyoder@bonnerkiernan.com
abassan@bonnerkiernan.com